Filed 8/12/16  In re Victoria P. CA5
Received for posting 8/16/16

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Victoria P. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANGELA H.,<br><br>Defendant and Appellant. | F072245<br><br>(Kern Super. Ct. Nos. JD132731 & JD132732)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  William D. Palmer, Judge.

Caitlin Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

Theresa A. Goldner, County Counsel, and Kelley D. Scott, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

Victoria and Danielle, both over 12 years old, were removed from the custody of their mother by the Kern County Department of Human Services (department) after their father in Ohio failed to assume custody and remove them from an unsafe environment. The children were placed in foster care and family reunification services were recommended for both parents. At disposition, the juvenile court placed the children in Ohio with their father and terminated jurisdiction, despite the children's, department's, and mother's objection. Mother appealed contending the juvenile court erred in placing the children with their father and terminating jurisdiction. The department filed a letter stating it agreed with mother's appeal.

We reverse the placement order and termination of jurisdiction and order further proceedings.

## FACTUAL AND PROCEDURAL SUMMARY

On September 23, 2014, the department was in contact with father in Ohio. Father stated he was aware Victoria and Danielle were in an unsafe home, there was violence in the home, and mother was using methamphetamines. The department repeatedly recommended father assume custody of the children, stating he could assume custody at any time. Father took no action, and the conditions in the children's home did not improve. Consequently, in January 2015, the department took action to file a dependency petition and remove the children from mother's custody.

The juvenile court sustained the Welfare and Institutions Code section 300[1] petition based upon mother's drug use and the condition of the home. The children were placed in foster care and doing well. A maternal great aunt applied for placement.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

After the maternal great aunt applied for placement, father requested the children be placed in his care. Father worked; his work hours were 3:00 a.m. to noon. Father lived with his elderly parents; the grandmother was disabled and required care. An assessment of the home in Ohio was conducted.

The department also conducted an assessment of father. Father had not cared for the children since they were young. The children had not seen father in over a year. Father and mother had been the subject of child protective service referrals when the family lived in Ohio, prior to mother moving to Kern County with the children. Father had a lengthy criminal history that includes drunkenness, robbery, disorderly conduct, endangering children and multiple DUIs – including one with children in the vehicle. Father had been abusive toward mother, especially when he had been drinking.

After the dependency petition was filed, father's visits with the children consisted of 10-minute phone conversations each day at 7:00 p.m. Father refused to answer the phone or speak with the children if they called late or at any other time. During conversations with his children, father was hostile, aggressive, swore a lot, and exhibited no patience or tolerance when speaking with them. Father made negative comments about mother and told the children the department and the foster parents did not care about them. When the department and foster parents attempted to speak with father about his comments and behavior on the phone, father yelled at them.

Both the girls felt bonded with their half sibling, a brother Justin, and their mother, both of whom would be in Kern County. They identified their mother as important to them, but did not express any attachment to father. The department characterized father's relationship with the children as limited.

The department opined that reunification with mother was in the children's best interests and that placement with father at this time would be detrimental. The department was of the opinion father needed to participate in parenting and neglect classes and submit to random drug testing. The recommendation for the disposition

3.

hearing was that the children continue in an out-of-home placement and order both parents to participate in reunification services.

At the July 8, 2015, disposition hearing, both Victoria and Danielle stated they did not wish to live with father. Victoria told the juvenile court that father swore at her and yelled at her "all the time." Victoria said father "scares me because he just yells all the time … [and] his criminal record." She also stated, "I just really don't want to go."

Danielle pointed out that father would not be caring for them; he was working nights and told them he would be asleep when they were awake. Danielle said they would have to be cared for by different family members.

Father did not appear at any of the hearings, including the disposition hearing. Father was represented by counsel at disposition and his counsel requested placement of the children with father.

Mother, the department, and the children's counsel all opined that Victoria and Danielle should not be placed with father and if they were placed with father, the juvenile court should continue its jurisdiction to ensure the children's safety and well-being.

In ruling, the juvenile court stated: "The girls, who are over 12, have reviewed their case plan and plan for permanent placement, have received a copy and expressed dissatisfaction. Further, they received information about their out-of-home placement and case plan, including being told of changes to the plan that in fact took place this morning …." The juvenile court granted father's request for placement and terminated dependency jurisdiction.

Mother filed an appeal on September 1, 2015, and noticed all parties through counsel. The department filed a response, stating it did not oppose mother's appeal.

## DISCUSSION

Mother and the department contend the juvenile court erred in placing Victoria and Danielle with father, contending the evidence established such placement was

4.

detrimental to the safety, protection, or physical or emotional well-being of the children. We agree.

### Section 361.2

Section 361.2, subdivision (a), provides that if a noncustodial parent requests custody of a child, the juvenile court shall place the child with the noncustodial parent unless the court finds that such placement would be detrimental to the safety, protection, or physical or emotional well-being of the child. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.) If the child is placed with the noncustodial parent, the juvenile court must determine whether to terminate jurisdiction, or continue jurisdiction. (§ 361.2, subd. (b).) The juvenile court is required to make findings, either written or on the record, of the basis for its determinations under section 361.2, subdivisions (a) and (b). (§ 361.2, subd. (c).)

A juvenile court is charged with making placement decisions that are in a minor's best interests. (*In re I.G.* (2014) 226 Cal.App.4th 380, 388.) A custody order is not disturbed on appeal absent an abuse of discretion. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179.) A custody order is reviewed for substantial evidence establishing that a reasonable trier of fact could find the order is appropriate. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

### Placement Was Detrimental

Placement of a child with a noncustodial parent must be a juvenile court's first priority if that parent requests custody, as father did here. (*In re M.C.* (2011) 195 Cal.App.4th 197, 224.) If the juvenile court denies placement with a noncustodial parent, it must find, by clear and convincing evidence, that the placement would be detrimental to the child. (*Ibid.*)

Here, the juvenile court found that the department and mother had not established by clear and convincing evidence that placement with father in Ohio would be detrimental. The record does not support this finding. The juvenile court had before it all

5.

of the information provided in the social studies submitted by the department, the home assessment and father's criminal background provided by the Ohio child protective services. In addition, the children expressed fear of their father and their desire not to be placed with him. The children, foster parents, and department reported inappropriate behavior by father toward the children. The department also noted a recent failure by father to take action to protect the children, when father had knowledge their safety was at risk. This information before the juvenile court established clear detriment to the children if placed with father.

Father had a criminal record, including child endangerment charges, and history of referrals to CPS in Ohio. While father's lifestyle 10 years prior placed the children at substantial risk, the conclusion of the Ohio home assessment was that father's home currently was a viable placement option for the girls. The Ohio CPS home evaluation, however, is one factor to consider, but not determinative.

Father had recently demonstrated an inability or refusal to protect his children. Father was aware Victoria and Danielle were in an unsafe home with mother, there was violence in the home, and mother was using methamphetamines. Yet, despite repeated requests from the department that father assume custody of the children, father took no action. Father failed to protect his children when he had the ability, and was requested, to do so.

At the time of the placement hearing, the children had not seen father in over a year and stated they did not wish to live with father. While the children's preference is not the deciding factor under section 361.2, (*In re John M.* (2006) 141 Cal.App.4th 1564, 1570), in light of their adolescent age their preference should be given great weight.

Father's night time work schedule required that he make arrangements for other family members to assist with caring for the girls. Although that alone does not disqualify father for placement (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1264), there is a lack of information in the record as to whether father had made such

6.

arrangements. The children themselves raised this issue at the placement hearing, only to be summarily rebuffed by the juvenile court. Father's work schedule meant that he would not be the caregiver for his children; he would be working as they slept and sleeping when they were awake. The other caregivers in the home were elderly and one was disabled and needing care herself.

Father's interaction with his daughters, as stated by his daughters, their foster parents, and the department, was inappropriate; father swore and yelled in his brief conversations with them. Victoria stated she was "scared" of her father because he yells at her all the time. Father had not been a custodial parent for some time; the children felt they did not know him and the department opined he had a limited relationship with his children. The department was of the opinion father needed parenting classes at a minimum.

The juvenile court itself told the children "give it a shot and we'll see what happens" with regards to placement with their father. This is hardly a ringing endorsement that the children were being placed in a stable, nurturing environment. There is virtually no evidence father was prepared to assume unsupervised custody.

Based upon the above record evidence, we conclude the juvenile court erred in not finding detriment to the children.

### Abuse of Discretion to Terminate Jurisdiction

Having determined that the juvenile court erred in finding that it was not detrimental to return the children to father, we also conclude that the court abused its discretion in placing them with him and terminating its jurisdiction.

### Conclusion

The juvenile court is charged with making a placement decision in the minor's best interests. (*In re I.G.*, *supra*, 226 Cal.App.4th at p. 388.) While we are reversing the juvenile court's order placing the children with their father in Ohio and terminating dependency jurisdiction, we are cognizant of the one year lapse of time since the

7.

placement decision was made and the potential impact a reversal might have on the children.  On remand, we will direct a placement hearing be held by the juvenile court within 30 days of the filing date of this opinion for the purpose of complying with section 361.2 and that a report be prepared by the department for purposes of this hearing.  The report shall include, but not be limited to, a current home visit report of the home in Ohio; current, private interviews with each of the children, including information about their school and home life; and a recommendation on whether to allow the children to remain in Ohio.

## DISPOSITION

The juvenile court's July 8, 2015, disposition order placing Victoria and Danielle with their father in Ohio and terminating dependency jurisdiction is reversed.  The juvenile court is directed to conduct a hearing on appropriate placement of the children within 30 days of the filing date of this opinion.  The department shall prepare a report addressing placement, and the court shall take such further actions as it deems appropriate pursuant to Welfare and Institutions Code section 361.2 and in conformance with this opinion.